Kristine M. Larsen (9228)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail: klarsen@rqn.com
        jclark@rqn.com
        bmerrill@rqn.com

*Attorneys for Receiver, Maria E. Windham*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> NATHANIEL ROBERT ALLEN, an individual; HEATHER ALLEN, an individual; NATE ALLEN FINANCIAL SERVICES, LLC, an expired Utah limited liability company; BRIAN M. CHRISTENSEN, an individual; CREATIVE WEALTH ACADEMY, LLC, a Utah limited liability company; INNOVATIVE RESEARCH, LLC, an expired Utah limited liability company; RENEWABLE RENTALS, LLC, an expired Utah limited liability company; RYAN L. FARR, an individual; MARK FARRELL, an individual; DAVID LEE JOHNSON, an individual; RANDY LAMOREAUX, an individual; DZ CONSULTING, INC., a dba or unknown entity; TONY LARSON, an individual; TODD CLIFTON LAWSON, an | **AMENDED COMPLAINT** <br> **(Ancillary Suit)** <br><br> Case No. 2:18-cv-00054-JNP-DBP <br><br> Magistrate Judge Dustin B. Pead |

individual; DAVID ROBINSON NIXON, an individual; WILLIAM R. NIXON, an individual; MIKE OBORN, an individual; PERFORMANCE EQUITY ADVISORS, INC., a Utah Corporation; NJM & ASSOCIATES, LLC, an expired Utah limited liability company; LEONIE PALMER, an individual; CAPITAL GAIN PUBLISHING, INC., a Texas corporation; SCRAT, LLC, an expired Utah limited liability company; MELHAVO ENTERPRISES, LLC, a dba or unknown entity; MELHAVO ENTERPRISES, INC., a dba or unknown entity; PRIME CONSULTING SERVICES, LLC, a Utah limited liability company; JUDD LEVI SIMPSON, an individual; PRO EQUITY HOMES, LLC, an expired Utah limited liability company;  ERIK EMIL THOMSEN, an individual; JOHN SIRSTINS, an individual; and DOES 1-5,

Defendants.

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the assets of the Marquis Properties Receivership Estate complains against Defendants Nathaniel Robert Allen, Heather Allen, Nate Allen Financial Services, LLC, Brian M. Christensen, Creative Wealth Academy, LLC, Innovative Research, LLC, Renewable Rentals, LLC, Ryan L. Farr, Mark Farrell, David Lee Johnson, Randy Lamoreaux, DZ Consulting, Inc., Tony Larson, Todd Clifton Lawson, David Robinson Nixon, William R. Nixon, Mike Oborn, Performance Equity Advisors, Inc.,  NJM & Associates, LLC, Leonie Palmer, Capital Gain Publishing, Inc., Scrat, LLC, Melhavo Enterprises, LLC, Melhavo Enterprises, Inc., Prime Consulting Services, LLC, Judd Levi Simpson, Pro Equity Homes, LLC, Erik Emil Thomsen, John Sirstins, and Does 1-5 (each a "Defendant" and collectively, "Defendants") as follows:

## **INTRODUCTION**

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme") perpetrated by Chad Deucher through Marquis Properties, LLC ("Marquis Properties"). Chad Deucher pleaded guilty in his criminal case to operating Marquis Properties as a Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case No. 2:16-CR-189-DN.

This is one of several "claw back" lawsuits concerning the Marquis Ponzi Scheme filed by the Receiver appointed by the Court in the civil case filed by the Securities and Exchange Commission ("SEC") concerning the Marquis Ponzi Scheme. In this lawsuit, the Receiver seeks to "claw back" into the Marquis Properties Receivership Estate commission payments paid by Marquis Properties directly or indirectly to or for the benefit of Defendants, who solicited investments in the Marquis Ponzi scheme.

Chad Deucher, acting while Marquis Properties was insolvent, and with fraudulent intent, caused Marquis Properties to make a series of similar commission payments to the Defendants, to compensate Defendants for soliciting victim investors into the Marquis Ponzi Scheme. These payments did not in any way benefit victim investors and instead diminished the assets available to Marquis Properties to repay defrauded investors. Moreover, Defendants' solicitations of investments in the Marquis Ponzi Scheme were unlawful sales of securities for which Defendants could not take payments in good faith. Finally, the Defendants were unjustly enriched by receipt of these payments, which came from money taken from victim investors. Each Defendant must return all payments that Marquis Properties transferred directly or

indirectly to the Defendant or paid to another on his behalf.  Together, the value of the commission payments Chad Deucher wrongfully caused Marquis Properties to pay to the Defendants identified in this lawsuit amounts to at least $ 1,064,281

## PARTIES

1.      Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2.      Defendant Nathaniel Robert Allen ("Nate Allen") is an individual who resides in Utah County, Utah.  Defendant Heather Allen is an individual who resides in Utah County, Utah. Defendant Nate Allen Financial Services, LLC ("Nate Allen Financial") is an expired Utah limited liability company owned and controlled by Defendant Nate Allen, and located in Utah County, Utah.  Collectively, Nate Allen, Heather Allen, and Nate Allen Financial are identified herein as the "Allen Defendants".  At all times relevant hereto, Nate Allen was also an investment broker associated with broker-dealer PFS Investments, Inc., and was FINRA licensed with CRD #4388180.

3.      Defendant Brian M. Christensen ("Christensen") is an individual who, upon information and belief, resides in Utah County, Utah.  Defendant Creative Wealth Academy, LLC ("CWA") is a Utah limited liability company with its principal place of business, upon information and belief, in Salt Lake County, Utah.  At all times relevant to this case, Defendant Christensen acted as an agent of CWA.  Defendant Innovative Research, LLC ("Innovative Research") and Defendant Renewable Rentals, LLC ("Renewable Rentals") are expired Utah limited liability companies owned and controlled by Christensen located in Salt Lake County, Utah.  Collectively, Christensen, CWA, Innovative Research, and Renewable Rentals are

4

identified herein as the "Christensen Defendants".

4.      Defendant Prime Consulting Services, LLC ("Prime Consulting") is a Utah limited liability company with its principal place of business in Davis County, Utah.

5.      Defendant Ryan L. Farr ("Farr") is an individual who, upon information and belief, resides in Utah County, Utah.

6.      Defendant Mark Farrell ("Farrell") is an individual who, upon information and belief, resides in Utah County, Utah.

7.      Defendant David Lee Johnson ("Johnson") is an individual who resides in Utah County, Utah.

8.      Defendant Randy Lamoreaux ("Lamoreaux") is an individual who resides in Utah County, Utah.  Defendant DZ Consulting, Inc. ("DZ") is, upon information and belief, a dba or unknown entity controlled by Defendant Lamoreaux with its principal place of business in Salt Lake County, Utah.  Collectively, Lamoreaux and DZ are identified herein as the "Lamoreaux Defendants".

9.      Defendant Tony Larson ("Larson") is an individual who, upon information and belief, resides in Utah County, Utah.

10.     Defendant Todd Clifton Lawson ("Lawson") is an individual who, upon information and belief, resides in Utah County, Utah.

11.     Defendant David Robinson Nixon ("David Nixon") is an individual who, upon information and belief, resides in Utah County, Utah.

12.     Defendant William R. Nixon ("William Nixon") is an individual who, upon information and belief, resides in Utah County, Utah.

5

13.     Defendant Mike Oborn ("Oborn") is an individual who resides in Salt Lake County, Utah.  Defendant Performance Equity Advisors, Inc. ("Performance Equity") is a Utah corporation owned or controlled by Oborn with its principal place of business in Salt Lake County, Utah.  Performance Equity was formerly operated by Oborn under the name Hardway Enterprises, Inc. ("Hardway").  Defendant NJM Associates, LLC ("NJM") is an expired Utah limited liability company owned or controlled by Oborn with its principal place of business in Salt Lake County, Utah.  Collectively, Oborn, Performance Equity, and NJM are identified herein as the "Oborn Defendants."

14.     Defendant Leonie Palmer ("Palmer") is an individual who resides in San Bernardino County, California.  Defendant Capital Gain Publishing, Inc. ("Capital Gain Publishing") is a Texas corporation with its principal place of business, upon information and belief, in Bell County, Texas.  Defendant Scrat, LLC ("Scrat") is an expired Utah limited liability company with its principal place of business, upon information and belief, in San Bernardino County, California.  Defendant Melhavo Enterprises, LLC ("Melhavo, LLC") is, upon information and belief, a dba or unknown entity controlled by Defendant Palmer.  Defendant Melhavo Enterprises, Inc. ("Melhavo, Inc.") is, upon information and belief, a dba or unknown entity controlled by Defendant Palmer.  Collectively, Palmer, Capital Gain Publishing, Scrat, Melhavo, LLC, and Melhavo, Inc. are identified herein as the "Palmer Defendants".

15.     Defendant Judd Levi Simpson ("Simpson") is an individual who, upon information and belief, resides in Utah County, Utah.  Defendant Pro Equity Homes, LLC ("Pro Equity Homes") is an expired Utah limited liability company with its principal place of business, upon information and belief, in Salt Lake County, Utah.  Collectively, Simpson and Pro Equity

Homes are identified herein as the "Simpson Defendants".

16.    Defendant John Sirstins ("Sirstins") is an individual who resides in Utah County, Utah.

17.    Defendant Erik Emil Thomsen ("Thomsen") is an individual who, upon information and belief, resides in Salt Lake County, Utah.

18.    Does 1 through 5 are individuals or entities whose identities are presently unknown who received transfers of commission payments from Marquis Properties directly or indirectly through or on behalf of the named Defendants.  The Receiver will move to amend her Complaint as the Does' identities become known.

## JURISDICTION AND VENUE

19.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Amended Order Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

20.    The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

### Marquis Ponzi Scheme

22.     Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

23.     On information and belief, Chad Deucher raised the money he used to operate the Marquis Ponzi Scheme from over 250 investors in Marquis Properties.

24.     Chad Deucher represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties.  In that regard, Chad Deucher represented that Marquis Properties located, purchased, renovated, and sold single family and small multi-family homes in lucrative areas of the country.  Chad Deucher told investors that Marquis Properties has proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement by the investors.

25.     Chad Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties.  He promised that Marquis Properties would pay return of "rents" on their investments even when no renters occupied the real properties.

26.     The investments offered by Marquis Properties constitute securities.

27.     Chad Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis Properties, and that investments would be "over-collateralized."

28.    Chad Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offers as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

29.    In April 2017, Chad Deucher pleaded guilty in his parallel criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and February 2016.  Moreover, in his statement in advance of his guilty plea, Chad Deucher admitted that he had engaged in securities fraud in relation to the sale of real-estate based securities.  *See* Case No. 2:16-CR-189-DN, Dkt. No. 50 at ¶¶ 11(a)-(e).

30.    On October 11, 2017, Chad Deucher was sentenced to 84 months in federal prison, and, upon his release, 36 months of supervised release.  Mr. Deucher was also ordered to pay $16,560,552.00 in restitution.

**The SEC Action**

31.    On January 19, 2016, in case No. 2:16-cv-00040-JNP, the SEC filed suit (the "SEC Action") against Chad Deucher, Richard Clatfelter and Marquis Properties.  Chad Deucher's wife, Jessica Deucher, was named as a relief defendant.

32.    On January 20, 2016, this Court entered the Order Freezing Assets and Protecting Documents (Dkt. No. 10) (the "Freeze Order").

33.    The Freeze Order specifically ordered that:

Except as otherwise specified herein, all of Defendants' Assets are frozen. All persons and entities with direct or indirect control over any of Defendants' Assets,

9

who receive actual notice of this order, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, encumbering, concealing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets. This freeze shall include, but is not limited to, Defendants' Assets that are on deposit with financial institutions such as banks, brokerage firms and mutual funds. Such institutions are caused to hold or retain within their control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties.

(*See id.* at 2-3.)

34.    On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant to which Maria E. Windham was appointed Receiver.  (*See* Dkt. No. 110.)

35.    On October 24, 2017, the Court amended the terms of the Order Appointing Receiver and issued an Amended Order Appointing Receiver.[1]  (Dkt. No. 182.)

36.    The Court found appointment of the Receiver to be "necessary and appropriate for the purposes of marshaling and preserving Defendants Marquis Properties (the 'Entity Receivership Defendant') and Chad Deucher's (the 'Individual Receivership Defendant') (collectively the 'Receivership Defendants') assets that were frozen by the [Freeze Order]." (Dkt. No. 182).

37.    The Court defined the "Receivership Estate" as the assets of Marquis Properties, LLC and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants

---

[1] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed Ms. Windham on the same terms.  (Dkt. No. 205.)  This procedure is utilized to reset the 10 day clock to file notices pursuant to 28 U.S.C. § 754.

(the "Recoverable Assets").[2]  (*Id.* at 1-2.)

38.    Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to, all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC; Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities").  (*Id.* at 2.)

39.    Moreover, the Court ordered that for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver.  (*Id.* at ¶ 4.)

40.    Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants, gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary.  Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity."  (*See id.* at ¶ 6.)  The Receiver is caused to "pursue and preserve all of the Marquis Entities claims (*id.* at 7), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver."  (*Id.* at ¶ 9(I); s*ee also id.* at ¶ 36.)

---

[2] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate.  (Dkt. No. 182).

**Fraudulent Transfers of Commissions to Defendants**

41.    While Chad Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties, LLC was insolvent, Chad Deucher caused a series of payments of commissions to be made to Defendants from Marquis Properties' bank accounts where the funds of victim investors were deposited.

42.    Chad Deucher caused Marquis Properties to make these commission payments, which constitute a related series of payment transactions, in furtherance of his fraud.

43.    Chad Deucher caused Marquis Properties to make these commission payments to Defendants in exchange for Defendants bringing additional victim investors into the Ponzi scheme.  Each and every one of these commission payments reduced the assets of Marquis Properties available to repay investors.

44.    Upon information and belief, the Defendants cannot establish that they returned reasonably equivalent value for each of the payments received and did so in good faith without reason to know the payment was improper.

**Specific Payments Made to Each Defendant**

**Allen Defendants**

45.    Defendants Nate Allen and/or Heather Allen promoted investments in Marquis Properties, LLC, including to individuals identified in correspondence with Chad Deucher as Nate Allen's and/or Heather Allen's "clients."

46.    One or more persons to whom Nate Allen and/or Heather Allen promoted the Marquis Ponzi Scheme invested in it, either directly by making payments to Marquis, or indirectly through the Allen Defendants.

12

47.     Chad Deucher caused Marquis Properties to pay the Allen Defendants commissions between September 2014 and April 2015 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payment:

   a.   On June 20, 2014, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 8978, to the Allen Defendants in the amount of $10,150.  Chad Deucher caused Marquis Properties to identify this payment in its financial records as a commission payment.  The payee is identified as "Heather Allen" regarding "Nate".

48.     Moreover, Chad Deucher caused Marquis Properties to transfer additional payments to the Allen Defendants in excess of any value provided by the Allen Defendants to Marquis Properties.

49.     Altogether, the Allen Defendants were the recipients and/or beneficiaries of at least $75,950 in payments from Marquis Properties, which constitute fraudulent transfers.  Those payments include commission payments made by Marquis Properties in exchange for the Allen Defendants bringing additional investors into the Marquis Ponzi scheme.

50.     The source of these payments to the Allen Defendants was investor funds.

51.     Some or all of the payments made to the Allen Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

52.     Additionally, Nate Allen was at all times relevant to this case a FINRA registered broker employed by PFS Investments, Inc. and was authorized to sell securities that were PFS Investments related products.  Heather Allen was not registered to sell securities.  Upon information and belief, the Allen Defendants were not authorized and/or were not licensed to sell

13

the unregistered securities offered by Chad Deucher as part of the Marquis Properties Ponzi Scheme.

53. Upon information and belief, the Allen Defendants had reason to know that the transfers received by the Allen Defendants were fraudulent transfers.

54. The Allen Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them from victim investors' funds.

**Christensen Defendants**

55. Christensen promoted investments in Marquis Properties, LLC to third parties acting as an agent of Defendant CWA.

56. One or more persons to whom Christensen promoted the Marquis Ponzi Scheme invested in it, either directly by making payments to Marquis, or indirectly through the Christensen Defendants.

57. Chad Deucher caused Marquis Properties to pay the Christensen Defendants commissions for Christensen's activities between January 2011 and November 2013 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

    a. On January 20, 2011, Marquis Properties made a payment from its bank account at U.S. Bank which had an account number ending in 9561, to Christensen in the amount of $2,000 with the notation "Ben Cabrerra fee."

    b. On August 22, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Renewable Rentals, LLC in the amount of $2,000 with the notation "Commission on Dianne Long."

    c. On August 23, 2011, Marquis Properties made a payment from its bank account at

U.S. Bank with an account number ending in 9561 to Innovative Research, LLC in the amount of $18,000 with the notation "Commission on Dianne Long".

58. Chad Deucher caused Marquis Properties to identify these and other transfers to the Christensen Defendants as commissions.

59. Altogether, the Christensen Defendants were the recipients and/or beneficiaries of at least $32,800 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Christensen bringing additional investors into the Marquis Ponzi scheme.

60. The source of these payments made to or for the benefit of the Christensen Defendants was investor funds.

61. These payments made to or on behalf of the Christensen Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

62. Additionally, the Christensen Defendants were not licensed to sell securities, and their sales of investments in the Marquis Ponzi Scheme were unlawful.

63. Upon information and belief, the Christensen Defendants had reason to know that the transfers they received were fraudulent transfers.

64. The Christensen Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them out of victim investors' funds.

**Defendant Prime Consulting**

65. Defendant Prime Consulting is owned and operated by its manager Pablo H. Del Castillo ("Del Castillo"). Del Castillo acted as part of the Marquis Properties' in-house sales

15

team.  He was assigned a designated telephone extension number at the Marquis Properties office, but Prime Consulting was paid the commissions on Del Castillo's sales.

66.     Del Castillo solicited investments in the Marquis Ponzi Scheme from third parties.

67.     One or more persons to whom Del Castillo promoted the Marquis Ponzi Scheme invested in it by making payments to Marquis Properties.

68.     Chad Deucher caused Marquis Properties to pay commissions to Prime Consulting in compensation for Del Castillo's services between December 2010 and June 2011 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

a. On February 15, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Prime Consulting in the amount of $22,235.85 with the notation "Jean Pat Robertson Sale."

b. On May 10, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Prime Consulting in the amount of $9,700 with the notation "Allison James sale/rev split."

69.     Chad Deucher caused Marquis Properties to identify these and all other transfers to Defendant Prime Consulting as commissions.

70.     Altogether, Prime Consulting was the recipient of at least $80,124 in commission payments from Marquis Properties, which constitute fraudulent transfers.  Those commission payments were made by Marquis Properties in exchange for Prime Consulting's manager, Del Castillo, bringing victim investors into the Marquis Ponzi scheme.

71.     The source of these payments made to Prime Consulting was investor funds.

16

72. These payments made to Prime Consulting were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

73. Additionally, neither Del Castillo nor Defendant Prime Consulting was licensed to sell securities, and their sale of investments in the Marquis Ponzi Scheme was unlawful.

74. Upon information and belief, the Del Castillo and Prime Consulting had reason to know that the transfers Prime Consulting received were illegal and were fraudulent transfers.

75. Prime Consulting would be unjustly enriched if it were permitted to retain the payments transferred to it out of victim investors' funds.

**Defendant Farr**

76. Farr was part of the Marquis Properties' in-house sales team. He was assigned a designated telephone extension number at the Marquis Properties office, but was paid commissions on his sales as an independent contractor.

77. Farr solicited investments in the Marquis Ponzi Scheme from third parties.

78. One or more persons to whom Farr promoted the Marquis Ponzi Scheme invested in it.

79. Chad Deucher caused Marquis Properties to pay Farr commissions between September 2010 and February 2013 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

    a. On September 21, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Farr in the amount of $3,250 with the notation "Commission for Barbara Wright Addison."

    b. On October 4, 2010, Marquis Properties made a payment from its bank account at

U.S. Bank with an account number ending in 9561, to Farr in the amount of $900 with the notation "Commission for Ryan Stark."

80.     Chad Deucher caused Marquis Properties to identify these and other transfers to Farr as commissions.

81.     Altogether, Farr was the recipient and/or beneficiary of at least $41,450 in commission payments from Marquis Properties, which constitute fraudulent transfers.  Those commission payments were made by Marquis Properties in exchange for Farr bringing additional investors into the Marquis Ponzi scheme.

82.     The source of these payments made to or for the benefit of Farr was investor funds.

83.     These payments made to or on behalf of Farr were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

84.     Additionally, Farr was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

85.     Upon information and belief, Farr had reason to know that the transfers he received were fraudulent transfers.

86.     Farr would be unjustly enriched if he were permitted to retain the payments transferred to them out of victim investors' funds.

**Defendant Farrell**

87.     Farrell solicited investments in the Marquis Ponzi Scheme from third parties.

88.     One or more persons to whom Farrell promoted the Marquis Ponzi Scheme invested in it.

18

89.     Chad Deucher caused Marquis Properties to pay Farrell commissions between March 2011 and June 2011 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

   a.   On March 21, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Farrell in the amount of $3,100 with the notation "Leoni Deal."

   b.   On June 10, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Farrell in the amount of $2,800 with the notation "Leoni 2nd Deal."

90.     Chad Deucher caused Marquis Properties to identify these transfers to Farrell as commissions.

91.     Altogether, Farrell was the recipient and/or beneficiary of at least $5,900 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Farrell bringing additional investors into the Marquis Ponzi scheme.

92.     The source of these payments made to or for the benefit of Farrell was investor funds.

93.     These payments made to or on behalf of Farrell were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

94.     Additionally, Farrell was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

95.     Upon information and belief Farrell had reason to know that the transfers he

received were fraudulent transfers.

96.     Farrell would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Defendant Johnson**

97.     Johnson solicited investments in the Marquis Ponzi Scheme from third parties.

98.     One or more persons to whom Johnson promoted the Marquis Ponzi Scheme invested in it.

99.     Chad Deucher caused Marquis Properties to pay Johnson commissions between June 2010 and October 2011 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

   a. On September 21, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Johnson in the amount of $5,000 with the notation "1/2 Sept. Commission."

   b. On January 14, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Johnson in the amount of $1,000 with the notation "Commission on Matt Smith"

100.     Chad Deucher caused Marquis Properties to identify these and other transfers to Johnson as commissions.

101.     Altogether, Johnson was the recipient and/or beneficiary of at least $74,500 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Johnson bringing additional investors into the Marquis Ponzi scheme.

20

102. The source of these payments made to or for the benefit of Johnson was investor funds.

103. These payments made to or on behalf of Johnson were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

104. Additionally, Johnson was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

105. Upon information and belief, Johnson had reason to know that the transfers he received were fraudulent transfers.

106. Johnson would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Lamoreaux Defendants**

107. Lamoreaux was part of the Marquis Properties' in-house sales team. He was assigned a designated telephone extension number at the Marquis Properties office, but was paid commissions on his sales as an independent contractor. Lamoreaux directed the payment of some of these commissions to DZ.

108. Lamoreaux solicited investments in the Marquis Ponzi Scheme from third parties.

109. One or more persons to whom Lamoreaux promoted the Marquis Ponzi Scheme invested in it, either directly by making payments to Marquis Properties, or indirectly through the Lamoreaux Defendants.

110. Chad Deucher caused Marquis Properties to pay commissions for the benefit of Lamoreaux to Lamoreaux and DZ between December 2010 and December 2014 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

21

a. On January 20, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to DZ in the amount of $2,800 with the notation "Fuffy Corey Sale."

b. On June 24, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Lamoreaux in the amount of $6,000 with the notation "Leoni Deal."

111. Chad Deucher caused Marquis Properties to identify these and other transfers to the Lamoreaux Defendants as commissions.

112. Altogether, the Lamoreaux Defendants were the recipients and/or beneficiaries of at least $265,627 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Lamoreaux bringing additional investors into the Marquis Ponzi scheme.

113. The source of these payments made to or for the benefit of the Lamoreaux Defendants was investor funds.

114. These payments made to or on behalf of the Lamoreaux Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

115. Additionally, the Lamoreaux Defendants were not licensed to sell securities, and their sales of investments in the Marquis Ponzi Scheme were unlawful.

116. Upon information and belief, the Lamoreaux Defendants had reason to know that the transfers they received were fraudulent transfers.

117. The Lamoreaux Defendants would be unjustly enriched if they were permitted to

retain the payments transferred to them out of victim investors' funds.

**Defendant Larson**

118.    Larson solicited investments in the Marquis Ponzi Scheme from third parties.

119.    One or more persons to whom Larson promoted the Marquis Ponzi Scheme invested in it.

120.    Chad Deucher caused Marquis Properties to pay Larson commissions between September 2010 and November 2010 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

   a.   On September 3, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Larson in the amount of $18,800 with the notation "47 Homes."

   b.   On October 15, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Larson in the amount of $2,200 with the notation "11 Homes."

121.    Chad Deucher caused Marquis Properties to identify these and other transfers to Larson as commissions.

122.    Altogether, Larson was the recipient and/or beneficiary of at least $22,200 in commission payments from Marquis Properties, which constitute fraudulent transfers.  Those commission payments were made by Marquis Properties in exchange for Larson bringing additional investors into the Marquis Ponzi scheme.

123.    The source of these payments made to or for the benefit of Larson was investor funds.

23

124.     These payments made to or on behalf of Larson were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

125.     Additionally, Larson was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

126.     Upon information and belief, Larson had reason to know that the transfers he received were fraudulent transfers.

127.     Larson would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Defendant Lawson**

128.     Lawson was part of the Marquis Properties' in-house sales team.  He solicited investments in the Marquis Ponzi scheme from the Marquis Properties office, where he was assigned a designated telephone extension number.

129.     Lawson solicited investments in the Marquis Ponzi Scheme from third parties.

130.     One or more persons to whom Lawson promoted the Marquis Ponzi Scheme invested in it.

131.     Chad Deucher caused Marquis Properties to pay Defendant Lawson commissions between February 2011 and June 2012 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

    a. On February 25, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Lawson in the amount of $3,300 with the notation "Pickerell Deal."

    b. On June 9, 2011, Marquis Properties made a payment from its bank account at

U.S. Bank with an account number ending in 9561, to Lawson in the amount of $1,007 with the notation "Commission on Tony."

132. Chad Deucher caused Marquis Properties to identify these and other transfers to Lawson as commissions.

133. Altogether, Lawson was the recipient and/or beneficiary of at least $31,411.56 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Lawson bringing additional investors into the Marquis Ponzi scheme.

134. The source of these payments made to or for the benefit of Lawson was investor funds.

135. These payments made to or on behalf of Lawson were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

136. Additionally, Lawson was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

137. Upon information and belief, Lawson had reason to know that the transfers he received were fraudulent transfers.

138. Lawson would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Defendant David Nixon**

139. David Nixon solicited investments in the Marquis Ponzi Scheme from third parties.

140. One or more persons to whom David Nixon promoted the Marquis Ponzi Scheme

25

invested in it.

141. Chad Deucher caused Marquis Properties to pay David Nixon commissions between November 2011 and December 2011 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

a. On November 4, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to David Nixon in the amount of $6,000 with the notation "1st Thomas Howard Deal."

b. On December 20, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to David Nixon in the amount of $3,000 with the notation "2nd Thomas Howard Deal."

142. Chad Deucher caused Marquis Properties to identify these and other transfers to David Nixon as commissions.

143. Altogether, Defendant David Nixon was the recipient and/or beneficiary of at least $15,500 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Defendant David Nixon bringing additional investors into the Marquis Ponzi scheme.

144. The source of these payments made to or for the benefit of David Nixon was investor funds.

145. These payments made to or on behalf of David Nixon were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

146. Additionally, David Nixon was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

26

147.    Upon information and belief, David Nixon had reason to know that the transfers he received were fraudulent transfers.

148.    David Nixon would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Defendant William Nixon**

149.    William Nixon solicited investments in the Marquis Ponzi Scheme from third parties.

150.    One or more persons to whom William Nixon promoted the Marquis Ponzi Scheme invested in it.

151.    Chad Deucher caused Marquis Properties to pay Defendant William Nixon commissions between May 2011 and June 2012 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

    a.   On May 3, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to William Nixon in the amount of $15,000 with the notation "On 8 Plex Ohio."

    b.   On June 18, 2012, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to William Nixon in the amount of $6,000 with the notation "5500 Deal."

152.    Chad Deucher caused Marquis Properties to identify these and other transfers to William Nixon as commissions.

153.    Altogether, William Nixon was the recipient and/or beneficiary of at least $45,900 in commission payments from Marquis Properties, which constitute fraudulent transfers.

Those commission payments were made by Marquis Properties in exchange for William Nixon bringing additional investors into the Marquis Ponzi scheme.

154.    The source of these payments made to or for the benefit of William Nixon was investor funds.

155.    These payments made to or on behalf of William Nixon were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

156.    Additionally, William Nixon was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

157.    Upon information and belief, William Nixon had reason to know that the transfers he received were fraudulent transfers.

158.    William Nixon would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Oborn Defendants**

159.    The Oborn Defendants solicited investments in the Marquis Ponzi Scheme from third parties.

160.    One or more persons to whom the Oborn Defendants promoted the Marquis Ponzi Scheme invested in it.

161.    Chad Deucher caused Marquis Properties to pay the Oborn Defendants commissions and/or "marketing" fees between June 2010 and March 2011 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

a.    On June 20, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to NJM & Associates in the

28

amount of $9,865 with the notation "Sale commission to Don Lantz of Brookside property."

b. On March 1, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9651 to Hardway Enterprises in the amount of $40,000 with the notation "Steve Truckenbrod."

162. Chad Deucher caused Marquis Properties to identify these and other transfers to the Oborn Defendants as commissions and marketing fees.

163. Altogether, the Oborn Defendants were the recipients and/or beneficiaries of at least $107,365 in commissions and marketing fee payments from Marquis Properties, which constitute fraudulent transfers.  Those commission and marketing fee payments were made by Marquis Properties in exchange for the Oborn Defendants bringing additional investors into the Marquis Ponzi scheme.

164. The source of these payments made to or for the benefit of the Oborn Defendants was investor funds.

165. These payments made to or on behalf of the Oborn Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

166. Additionally, the Oborn Defendants were not licensed to sell securities, and their sales of investments in the Marquis Ponzi Scheme were unlawful.

167. Upon information and belief, the Oborn Defendants had reason to know that the transfers they received were fraudulent transfers.

168. The Oborn Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them out of victim investors' funds.

**Palmer Defendants**

169.   Palmer solicited investments in the Marquis Ponzi Scheme from third parties.

170.   One or more persons to whom Palmer promoted the Marquis Ponzi Scheme invested in it.

171.   Chad Deucher caused Marquis Properties to pay the Palmer Defendants commissions and other payments between January 2011 and March 2013 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

   a.   On January 21, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Capital Gain Publishing in the amount of $10,920 with the notation "Fuffy Corey Fee."

172.   Chad Deucher caused Marquis Properties to identify this and other transfers to the Palmer Defendants as commissions.

173.   Moreover, Chad Deucher caused Marquis Properties, LLC to transfer additional payments to the Palmer Defendants in excess of any value provided by the Palmer Defendants to Marquis Properties, LLC.

174.   Altogether, the Palmer Defendants were the recipients and/or beneficiaries of at least $37,004 in payments from Marquis Properties, which constitute fraudulent transfers.  Those payments include commission payments made by Marquis Properties in exchange for Palmer bringing additional investors into the Marquis Ponzi scheme.

175.   The source of these payments made to or for the benefit of the Palmer Defendants was investor funds.

176.   These payments made to or on behalf of the Palmer Defendants were unsupported

by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

177.    Additionally, the Palmer Defendants were not licensed to sell securities, and their sales of investments in the Marquis Ponzi Scheme were unlawful.

178.    Upon information and belief, the Palmer Defendants had reason to know that the transfers they received were fraudulent transfers.

179.    The Palmer Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them out of victim investors' funds.

**Simpson Defendants**

180.    The Simpson Defendants solicited investments in the Marquis Ponzi Scheme from third parties.

181.    One or more persons to whom the Simpson Defendants promoted the Marquis Ponzi Scheme invested in it.

182.    Chad Deucher caused Marquis Properties to pay the Simpson Defendants commissions between August 2010 and February 2013 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

    a.  On November 29, 2012, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Simpson in the amount of $10,000 with the notation "Steve Guarino."

    b.  On January 25, 3013, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561 to Pro Equity in the amount of $ 4,000 with the notation "Steve Guarino Advance."

183.    Chad Deucher caused Marquis Properties to identify these and other transfers to

31

the Simpson Defendants as commissions.

184.    Altogether, the Simpson Defendants were the recipients and/or beneficiaries of at least $21,000 in commission payments from Marquis Properties, which constitute fraudulent transfers.  Those commission payments were made by Marquis Properties in exchange for Simpson bringing additional investors into the Marquis Ponzi scheme.

185.    The source of these payments made to or for the benefit of the Simpson Defendants was investor funds.

186.    These payments made to or on behalf of the Simpson Defendants were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

187.    Additionally, the Simpson Defendants were not licensed to sell securities, and their sales of investments in the Marquis Ponzi Scheme were unlawful.

188.    Upon information and belief, the Simpson Defendants had reason to know that the transfers they received were fraudulent transfers.

189.    The Simpson Defendants would be unjustly enriched if they were permitted to retain the payments transferred to them out of victim investors' funds.

**Defendant Sirstins**

190.    Sirstins solicited investments in the Marquis Ponzi Scheme from third parties.

191.    Upon information and belief, one or more persons to whom Sirstins promoted the Marquis Ponzi Scheme invested in it.

192.    Chad Deucher caused Marquis Properties to pay Sirstins commissions between May 2011 and December 2011 in furtherance of the Marquis Ponzi Scheme, including without

32

limitation the following payments:

    a.   On November May 16, 2011, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Sirstins in the amount of $10,000 with the notation "Commission Advance."

193.    Chad Deucher caused Marquis Properties to identify this and other transfers to the Sirstins as commissions.

194.    Altogether, the Sirstins was the recipient and/or beneficiary of at least $18,000 in commission payments from Marquis Properties, which constitute fraudulent transfers. Those commission payments were made by Marquis Properties in exchange for Sirstins bringing additional investors into the Marquis Ponzi scheme.

195.    The source of these payments made to or for the benefit of Sirstins was investor funds.

196.    These payments made to or on behalf of Sirstins were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties.

197.    Additionally, Sirstins was not licensed to sell securities, and his sales of investments in the Marquis Ponzi Scheme were unlawful.

198.    Upon information and belief, Sirstins had reason to know that the transfers he received were fraudulent transfers.

199.    Sirstins would be unjustly enriched if he were permitted to retain the payments transferred to him out of victim investors' funds.

**Defendant Thomsen**

200.    Thomsen was part of Marquis Properties' in-house sales team. He was assigned a

designated telephone extension number at the Marquis Properties office.

201. Thomsen solicited investments in the Marquis Ponzi Scheme from third parties.

202. One or more persons to whom Thomsen promoted the Marquis Ponzi Scheme invested in it.

203. Chad Deucher caused Marquis Properties to pay Thomsen  commissions in his name and in the name of Thomsen's then-wife, Wendy Thomsen, between August 2010 and September 2014 in furtherance of the Marquis Ponzi Scheme, including without limitation the following payments:

   a. On August 5, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Thomsen in the amount of $4,000 with the notation "Commission for Robin Westin Schmit 4."

   b. On August 12, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561, to Thomsen in the amount of $1,000 with the notation "Commission for Carl Morberg 1."

   c. On August 25, 2010, Marquis Properties made a payment from its bank account at U.S. Bank with an account number ending in 9561 to Wendy Thomsen in the amount of $4,000 with the notation "Commission for Hodapp".

204. Chad Deucher caused Marquis Properties to identify these and other transfers made directly to Thomsen or made indirectly to Wendy Thomsen for Thomsen's benefit as commissions.

205. Altogether, Thomsen was the recipient and/or beneficiary of at least $189,550 in commission payments from Marquis Properties, which constitute fraudulent transfers.  Those

commission payments were made by Marquis Properties in exchange for Defendant Thomsen bringing additional victim investors into the Marquis Ponzi scheme.

206. The source of all of these payments made to or for the benefit of Thomsen was investor funds.

207. These payments made to or on behalf of Thomsen were unsupported by good faith and reasonably equivalent value, and they must be returned to Marquis Properties by Thomsen.

208. Additionally, Thomsen was not licensed to sell securities, and his sale of investments in the Marquis Ponzi Scheme was unlawful.

209. Upon information and belief, Thomsen had reason to know that the transfers he received were fraudulent transfers.

210. Thomsen would be unjustly enriched if he were permitted to retain the benefit of payments transferred to him and to Wendy Thomsen out of victim investors' funds.

**John Doe Defendants**

211. The John Doe Defendants, whose identities are presently unknown to the Receiver, received additional transfers of funds directly or indirectly from Marquis Properties, through or on behalf of the Defendants named herein without themselves taking such payments in good faith and for reasonably equivalent value.

212. The John Doe Defendants received transfers of funds directly or indirectly from Marquis Properties through or on behalf of the Defendants named herein under circumstances that make their retention of such payments unjust.

35

## FIRST CLAIM FOR RELIEF
### (Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants)

213.   The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

214.   Each and every Defendant received transfer(s) of assets from Marquis Properties and/or is a beneficiary of the transfer(s) of assets from Marquis Properties.

215.   At all times relevant to the matters asserted herein, Chad Deucher operated Marquis Properties as a Ponzi scheme.

216.   Because the transfers were made at the direction of Chad Deucher while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made by Chad Deucher with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

217.   Furthermore, the transfers were made at a time when Marquis Properties was insolvent.

218.   The payments were made from investor funds and reduced the amount of money available to return to investors.

219.   Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments or the benefit of the payments in good faith.

36

## SECOND CLAIM FOR RELIEF
### (Unjust enrichment – All Defendants)

220.    The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

221.    A benefit was conferred upon each and every Defendant by transfer(s) of assets belonging to Marquis Properties to the Defendant or to another for the Defendant's benefit.

222.    Each and every Defendant knew of the benefit conferred upon him or her by the receipt of assets or the benefit of the assets from Marquis Properties.

223.    Each and every Defendant's retention of assets or the benefit of the assets conferred by Marquis Properties, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

224.    At all times relevant to the matters asserted herein, each Defendant did not have a license to sell securities and/or each Defendant otherwise sold securities in violation of applicable securities laws.

225.    Defendants could not legally accept commissions or other fees for bringing investors into the Ponzi scheme in violation of securities laws.

226.    It would be unjust to allow Defendants to retain these illegally obtained commissions and fees or to retain the benefit thereof.

**WHEREFORE**, the Receiver prays as follows:

A.  The Receiver requests that each and every Defendant be ordered to return to the Receivership Estate the payments that he or she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver for the total amount

transferred to each Defendant;

B.  In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver.  Further, the Receiver requests that she be granted any other relief, both special and general, to which she may be justly entitled;

C.  For prejudgment interest on each of the payments transferred to Defendants; and

D.  For such other relief as the Court may allow.

DATED this 28th day of February, 2018.

RAY QUINNEY & NEBEKER P.C.

*/s/ Jascha Clark*

Kristine M. Larsen
Jascha K. Clark
Brittany J. Merrill

*Attorney for the Receiver, Maria E. Windham*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2018, I caused a true and correct copy of the foregoing **AMENDED COMPLAINT** to be filed with the Clerk of Court using the Court's ECF System.

*/s/ Jascha Clark*

1443744

39