# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>TODD CLIFTON LAWSON, *et al.*,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:18-cv-00054-JNP-DBP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

In a prior case, Chad Deucher pleaded guilty to securities fraud and admitted to operating Marquis Properties, LLC as a Ponzi scheme. On January 18, 2017, the court appointed Maria Windham to act as the Receiver for Marquis Properties. Exactly one year later, she sued several individuals and entities in an attempt to recover Marquis Properties' assets. She alleges two claims for relief as to all the defendants: (1) fraudulent transfers under Utah's Uniform Fraudulent Transfer Act (UFTA), and (2) unjust enrichment. Defendant Todd Lawson moved to dismiss both claims as to him on the grounds that they are time barred. [Docket 64]. After the parties briefed the motion to dismiss, the court ordered them to brief whether the Receiver has standing to assert the fraudulent transfer claim.

The court concludes that the Receiver may assert a fraudulent transfer claim on behalf of Marquis Properties against Lawson. The court also determines that the fraudulent transfer and unjust enrichment claims are not time barred. The court, therefore, DENIES Lawson's motion to dismiss.

1

## FACTUAL ALLEGATIONS[1]

Chad Deucher operated Marquis Properties as a Ponzi scheme from March 2010 to February 2016. He told investors that Marquis Properties located, purchased, renovated, and sold homes in lucrative areas of the country. And he often promised guaranteed returns. But in reality, Marquis Properties was insolvent and paid its investors with money from new investors.

Todd Lawson was part of the Marquis Properties' in-house sales team and found investors for Marquis Properties. Marquis Properties paid Lawson at least $31,411.56 in commissions between February 2011 and June 2012.

Deucher eventually pleaded guilty to securities fraud and admitted that Marquis Properties was a Ponzi scheme. On January 18, 2017, in a parallel civil case, the court appointed Maria Windham to act as the Receiver for Marquis Properties. She filed this lawsuit on January 18, 2018—exactly one year after she was appointed.

## ANALYSIS

The court first addresses the issue of the Receiver's standing to assert a fraudulent transfer claim on behalf of Marquis Properties to recover commissions that it paid to Lawson. The court then addresses Lawson's statute of limitations arguments.[2]

## I.  FRAUDULENT TRANSFER CLAIM

At the time that Marquis Properties paid commissions to Lawson, Utah's UFTA provided that a

---

[1] The following facts are drawn from the Receiver's amended complaint. [Docket 9]. For the purposes of this motion, the court presumes that the Receiver's factual allegations are true and construes them in the light most favorable to the Receiver. *See Hall v. Bellman*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[2] Lawson raises a defense against a claim for disgorgement. But the court need not address this defense because the Receiver does not seek disgorgement.

> transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation:
>> (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>> (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; and the debtor:
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

UTAH CODE § 25-6-5(1) (2012).[3] A creditor may avoid a transfer if it can satisfy the conditions set forth in this statute. § 25-6-8(1) (2012). "A fraudulent transfer in Utah first requires a creditor-debtor relationship." *Bradford v. Bradford*, 993 P.2d 887, 891 (Utah Ct. App. 1999). Only creditors have standing to assert a claim under the UFTA. *See Rupp v. Moffo*, 358 P.3d 1060, 1062–63 (Utah 2015).

A creditor is an individual or entity that has a right to payment against a debtor. § 25-6-2(3), (4), (6) (2012). The court asked the parties to brief whether Marquis Properties, which is currently controlled by the Receiver, is a creditor with standing to sue under the UFTA. Based upon binding Tenth Circuit precedent, the court concludes that the Receiver for Marquis Properties is a creditor within the meaning of the UFTA.

The Tenth Circuit addressed the application of the UFTA in the context of a Ponzi scheme in *Klein v. Cornelius*, 786 F.3d 1310 (10th Cir. 2015). In that case, an individual operated a business entity as a Ponzi scheme. *Id.* at 1313–14. The Ponzi scheme operator transferred funds from the business entity to William Cornelius to pay for unrelated criminal defense costs. *Id.* at 1314. A court subsequently appointed a receiver to take control of the

---

[3] In 2017, the Utah Legislature renumbered the provisions of the UFTA and changed the name of the Act to the Uniform Voidable Transactions Act. But the amendments "do not apply to a transfer made or obligation incurred before May 9, 2017." UTAH CODE § 25-6-406(2)(b). So the court cites the pre-amendment statutes throughout this order.

business entity and to recover funds for the benefit of the victims of the Ponzi scheme. *Id.* The receiver sued Cornelius under the UFTA to recover the funds transferred to him. *Id.* Cornelius argued that the receiver, standing in the shoes of the Ponzi scheme business entity, had no standing under the UFTA to sue third-party recipients of funds derived from the scheme. *Id.* at 1316.

The Tenth Circuit disagreed. Adopting the reasoning of *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (Posner, C.J.), the *Klien* court held that a business entity operated as a Ponzi scheme is itself abused by the Ponzi scheme operator. *Klein*, 786 F.3d at 1317. Once, the Ponzi scheme operator's "spell" over the business entity is broken by the appointment of a receiver, "a business entity abused by a Ponzi scheme qualifies as a defrauded creditor" within the meaning of the UFTA. *Id.* at 1316–17. Thus, the Tenth Circuit held that a receiver has standing as a creditor to bring a claim against third-party recipients of the proceeds of a Ponzi scheme.

When the Tenth Circuit "has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved the issue." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). No subsequent opinion of the Utah Supreme Court has addressed the issue of whether a receiver has standing to assert a claim under the UFTA.[4] This court is therefore bound by the holding of *Klien*.[5] The Receiver has standing as a creditor under the UFTA to sue Lawson.

---

[4] Other defendants in this lawsuit filed a brief in response to the court's order for briefing on the UFTA standing issue. [Docket 162]. These defendants argue that *Rupp v. Moffo*, 358 P.3d 1060 (Utah 2015) is an intervening decision of the Utah Supreme Court that addressed the standing issue. The court disagrees. *Rupp* held that a bankruptcy trustee has statutory standing to assert a claim under the UFTA. *Id.* at 1063. That opinion did not address whether a Ponzi scheme receiver has a standing as a creditor to sue third-party recipients of the proceeds of the scheme.

[5] This court asked the parties to brief whether the standing issue should be certified to the Utah Supreme Court. The Receiver opposed certification and Lawson presented no argument one way or the other. The court elects not to certify this question.

## II. STATUTES OF LIMITATION

### A. *Motion Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a plaintiff's claim for failure to state a claim upon which relief can be granted. In resolving a Rule 12(b)(6) motion, the court must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted).

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyo. Med. Ctr, Inc.*, 524 F. App'x. 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

### B. *Uniform Fraudulent Transfer Act*

Section 25-6-10 of the Utah Code (2012) provides the time limit for filing a claim under the UFTA:

> A claim for relief or cause of action regarding a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> (1) under Subsection 25-6-5(1)(a), within four years after the transfer was made or obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) under Subsection 25-6-5(1)(b), within four years after the transfer was made or the obligation was incurred; or
>
> (3) under Subsection 25-6-6(2), within one year after the transfer was made or the obligation was incurred.

Because the Receiver's claim was filed more than four years after Marquis Properties paid commissions to Lawson, neither § 25-6-10(2) nor § 25-6-10(3) apply. Thus, the Receiver's claim

is extinguished unless it meets the requirements of § 25-6-10(1): (1) the claim arises under § 25-6-5(1)(a), and (2) the claim was brought no later than one year after the transfer could reasonably have been discovered by the Receiver.

Section 25-6-5(1)(a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ." Lawson contends that he is "the debtor" and that the Receiver has not alleged that he acted with "actual intent to hinder, delay, or defraud" any of his creditors. So, according to him, the Receiver has not alleged a claim under § 25-6-5(1)(a), and thus her claim is extinguished. Lawson, however, misunderstands the statute.

Lawson is not the debtor, as that term is used in the statute. A "claim" is "a right to payment," a "creditor" is "a person who has a claim," and a "debtor" is "a person who is liable on a claim." § 25-6-2(3), (4), (6) (2012). As noted above, the Tenth Circuit has made clear that "a business entity abused by a Ponzi scheme qualifies as a defrauded creditor" because "[i]nstead of using the sales' proceeds for [its] stated purpose[], the corporation[], under the [wrongdoer's] control, paid various third parties." *Klein v Cornelius*, 786 F.3d 1310, 1316 (10th Cir. 2015) (citing *Scholes v. Lehmann*, 56 F.3d 750, 753–54 (7th Cir. 1995)).

Here, Deucher caused Marquis Properties to pay commissions to Lawson based on Lawson's ability to find new investors for the Ponzi scheme. These transfers deprived Marquis Properties of funds that should have been used for a legitimate business purpose. As such, Marquis Properties is a creditor. And as a creditor, Marquis Properties has a "claim"—or right to payment—against Deucher because he misused company funds. Consequently, Deucher, not Lawson, is "the debtor" because Deucher, not Lawson, caused Marquis Properties to pay out

6

funds for an improper purpose—the perpetuation of a Ponzi scheme.

Thus, the Receiver has stated a claim under § 25-6-5(1)(a). First, she alleged that Deucher, the debtor, caused Marquis Properties to transfer money to Lawson. Second, she alleged that Deucher intended to defraud Marquis Properties when he transferred money to Lawson. Because the Receiver has alleged a claim under § 25-6-5(1)(a), and because she brought the claim within one year of her appointment, her claim is timely. *See* § 25-6-10(1) (2012).

C.  *Unjust Enrichment*

Claims for unjust enrichment are subject to a four-year statute of limitations. UTAH CODE § 78B-2-307(3). But Utah law recognizes an "equitable discovery rule" that tolls a fixed statute of limitations when "the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action." *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005). "[T]he doctrine of equitable tolling should not be used simply to rescue litigants who have inexcusably and unreasonably slept on their rights, but rather to prevent the expiration of claims to litigants who, *through no fault of their own,* have been unable to assert their rights within the limitations period." *Garza v. Burnett*, 321 P.3d 1104, 1107 (Utah 2013) (citation omitted). Thus, "the party seeking equitable tolling must first show that he was indeed disabled . . . from protecting his claim." *Id.* (citation omitted).

Equitable tolling "generally applies in cases involving Ponzi scheme entities that have been placed in the hands of an equity receiver because the fraudulent nature of the transfers can only be discovered once the Ponzi operator has been removed." *Wing v. Kendrick*, No. 2:08-CV-01002-DB, 2009 WL 1362383, at *3 (D. Utah May 14, 2009). Here, "as long as [Marquis Properties] remain[ed] under the control of [Deucher], [Marquis Properties] [could not] be expected to take action to vindicate the harms and injustices perpetrated by [Deucuher]." *Id.*

7

(citation omitted). In other words, as long as Deucher, the Ponzi scheme operator, controlled Marquis properties, it was effectively disabled from pursuing an unjust enrichment claim to recover funds improperly paid out to perpetuate the scheme. As such, this case presents an "exceptional circumstance" where application of the fixed statute of limitations would be irrational and unjust.

Thus, the four-year statute of limitations did not begin to run until the court appointed the Receiver on January 18, 2017—the first date on which Marquis Properties could be expected to vindicate the harms and injustices perpetrated by Deucher. The Receiver then filed her claim on January 18, 2018—well before the four-year statute of limitations had run.

## CONCLUSION

The Receiver has standing to assert a claim under the UFTA. And both of the Receiver's claims against Lawson are timely. Accordingly, Lawson's motion to dismiss [Docket 64] is DENIED.

Signed January 16, 2019

                                        BY THE COURT

                                        _____
                                        Jill N. Parrish
                                        United States District Court Judge