FILED
2020 NOV 17 PM 3:08
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATHANIEL ROBERT ALLEN, et al.,<br><br>Defendant. | **ORDER DENYING RECEIVER'S MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 2:18-cv-00054-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the Court are Maria Windham's ("Receiver" or "Windham") Motions for Summary Judgment against Randy Lamoreaux ("Lamoreaux"), Erik Thomsen ("Thomsen"), Mike Oborn ("Oborn"), Todd Lawson ("Lawson"), and Mark Ferrell ("Ferrell") (collectively "Defendants"). Windham seeks to recover funds from Defendants under the Uniform Fraudulent Transfer Act ("UFTA"), Utah Code Ann. § 25-6 (West 2014). For the reasons below, the court DENIES the Motion.

## FACTUAL BACKGROUND

The present dispute revolves around payments made to Defendants by a Ponzi scheme. Between 2010 and 2016, Chad Deucher ("Deucher") ran Marquis Properties, LLC ("Marquis Properties") as a Ponzi scheme. While he purported to offer investments in "turnkey real estate properties," Deucher actually used the principal from new investments to pay old investors. He also used investor funds for his own personal benefit. Deucher admitted these facts prior to

pleading guilty to federal criminal charges. In the SEC's civil case against Deucher, this court appointed Windham as Receiver to recuperate or "claw back" funds related to the Ponzi scheme. Windham sued the present Defendants to recover funds that were transferred to them as commissions or referral fees for bringing investors into the Ponzi scheme.

**I.    Lamoreaux Defendants**

Windham alleges that Marquis Properties paid $275,627.25 in referral fees to Lamoreaux, DZ Consulting ("DZ"), and Gary Weight ("Weight") for Lamoreaux's benefit. While Lamoreaux does not dispute the amount, he argues that payments to DZ totaling $119, 947.65 and payments to Weight in the amount of $10,000 were not for his benefit. He argues that it is inappropriate to lump the three together as "Lamoreaux defendants," maintaining that while DZ expired as a legal entity in 2002, it still had its own bank account at the time the transfers were made.

**II.   Thomsen Defendants**

Windham alleges that Marquis Properties paid $189,550 in referral fees to Thomsen and his then-wife, Wendy Thomsen ($166,350 to Erik Thomsen and $23,200 to Wendy Thomsen). While Thomsen does not dispute the amount paid to him, he asserts that he has no knowledge regarding any payments made to Wendy Thomsen. He also asserts that she did not transfer to him any funds she may have received.

**III.  Oborn Defendants**

Windham alleges that Marquis Properties paid $107,365 in referral fees to NJM Associates, LLC ("NJM") and Hardway Enterprises, Inc. ("Hardway") for investors solicited by Oborn. Oborn denies that these payments were made for his benefit. Rather, he asserts that all payments were made for the benefit of NJM, an entity of which Oborn was only one of three members.

**IV.   Lawson**

Windham alleges that Marquis Properties paid $31,411.56 in referral fees to Lawson. Lawson does not dispute that Marquis Properties paid him this sum; however, he asserts that not all of the funds were commissions or referral fees. Rather, he claims that $10,406.56 of that amount was paid for IT work he performed for Marquis Properties. He further asserts that he is entitled to an offset of $5,000 as a result of a loan he made to Marquis Properties that has not been repaid.

## V.     Ferrell

Windham alleges that Marquis Properties paid Ferrell $5,900 in referral fees. Ferrell does not dispute this, as he has not filed a response to this Motion. In response to interrogatories, he stated that he "performed actual work to locate and provide referrals, in exchange for which I was paid for calling the leads."

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, the court must "construe the

evidence in the light most favorable to . . . the nonmoving party." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation and alteration omitted).

## DISCUSSION

Under the UFTA, a transfer is voidable if a debtor made it with "actual intent to . . . defraud any creditor of the debtor." Utah Code Ann. § 25-6-5(1) (West 2014).[1] A creditor may recover the value of the transfer from the "first transferee of the asset or the person for whose benefit the transfer was made." *Id.* § 25-6-9(2). However, a transfer that would otherwise be voidable may not be voided if the transferee "took in good faith and for a reasonably equivalent value." *Id.* § 25-6-9(1).

### I.   Intent to Defraud

There is no dispute that Marquis Properties transferred funds to the defendants with actual intent to defraud its creditors. The Tenth Circuit has ruled that "because Ponzi schemes are insolvent by definition, [courts] may presume that transfers from such entities involve actual intent to defraud." *Klein v. Cornelius*, 786 F.3d 1310, 1321 (10th Cir. 2015). This court has previously applied the same presumption. *See, e.g., S.E.C. v Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1279 (D. Utah 2009) ("Under the UTFA, a debtor's actual intent to . . . defraud is conclusively established by proving that the debtor operated as a Ponzi Scheme.") (citation omitted).

---

[1] In 2017, the Utah Legislature renumbered the provisions of the UFTA and changed the name of the Act to the Uniform Voidable Transactions Act. But the amendments "do not apply to a transfer made or obligation incurred before May 9, 2017." UTAH CODE § 25-6-406(2)(b). So the court applies the pre-amendment statute throughout this order.

Here, Windham offers Deucher's guilty plea, in which he admitted to paying new investors with investor funds, as evidence that Deucher operated Marquis Properties as a Ponzi Scheme. Defendants do not dispute that Marquis Properties was run as a Ponzi Scheme. Therefore, Windham has met her burden of showing that no genuine dispute of fact exists on this issue and that, as a matter of law, Marquis Properties transferred funds to Defendants with actual intent to defraud.

II.     **Good Faith and Reasonably Equivalent Value**

Windham, in the Motion, does not address whether Defendants acted in good faith. Rather, she focuses solely on the issue of reasonably equivalent value, arguing that Defendants did not, as a matter of law, provide reasonably equivalent value in exchange for their payments from Marquis. In support, she points to a Fifth Circuit case that this court has cited favorably in the past. In *Warfield v. Byron*, 436 F.3d 551, 554–55 (5th Cir. 2006), a receiver brought an action under the UFTA to recover referral fees paid to the defendants by a Ponzi scheme. In rejecting the defendants' argument that they had provided reasonably equivalent value in exchange for the referral fees, a Fifth Circuit panel stated that "[i]t takes cheek to contend that in exchange for the payments he received, the [ ] Ponzi scheme benefited from his efforts to extend the fraud by securing new investments." *Id.* at 560. The court reasoned that providing services to a Ponzi scheme only "exacerbates harm to defrauded creditors." *Id.* (citing *Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 16 (Bankr. D.C. 1993)).

This court has previously cited *Warfield* for the proposition that "[t]hose who receive money for bringing new investors to a [Ponzi] scheme have not provided reasonably equivalent value within the meaning of the [UFTA]." *Wing v. Holder*, No. 2:09-CV-118, 2010 WL 5021087, at *2 (D. Utah Dec. 3, 2010) (citing *Warfield*, 436 F.3d at 560). But other courts, and this court on

other occasions, have rejected this line of thinking. In *Merrill v. Allen (In Re Universal Clearing House Co.)*, 60 B.R. 985, 999 (D. Utah 1986), this court rejected the argument that because Ponzi Schemes are "driven further into insolvency with each transaction," the defendants "gave no value" by bringing in investors. Instead, the court concluded that a "determination of whether value was given . . . should focus on the value of the goods and services provided rather than on the impact that the goods and services had on the bankrupt enterprise." *Id.* at 1000.[2] Otherwise, the court reasoned:

> [N]o one who in any way dealt with, worked for, or provided services to the debtors could prevent avoidance of any transfers they received. The debtors' landlord, salaried employees, accountants and attorneys, and utility companies that provided services to the debtors all assisted the debtors in the furtherance of their fraudulent scheme.

*Id.* at 999. The Eleventh Circuit adopted this approach and noted that several district courts also have adopted it. *See Orlick v. Kozyak (In re Fin. Federated Title & Tr., Inc.)*, 309 F.3d 1325, 1330–33 (11th Cir. 2002) (agreeing with holding in *Universal Clearing House* and collecting cases). To this court's knowledge, this issue has gone before the Tenth Circuit on one occasion, but the Tenth Circuit panel in that case did not address it because the matter could be resolved on alternate grounds. *See Wing v. Dockstader*, 482 Fed. Appx. 361, 365–66 (10th Cir. 2012).

---

[2] While *Universal Clearing House* was a bankruptcy case, the issues presented in that case are nearly identical to Ponzi-scheme receiver cases brought under the UFTA. Chapter 11 provides a similar good faith and value defense to transferees. *See* 11 U.S.C. § 548(c). Indeed, the Fifth Circuit cited several bankruptcy cases in reaching its decision in *Warfield. See Warfield,* 436 F.3d at 560 (citing *Ramirez Rodriguez v. Dunson (In re Ramirez Rodriguez)*, 209 B.R. 424, 434 (Bankr. S.D. Tex. 1997); *Randy v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 438–39 (Bankr. N.D. Ill. 1995); *In re Int'l Loan Network, Inc.*, 160 B.R. 1 at 16.

In short, there is no binding precedent on this point, and other courts that have considered the issue are in conflict. They fall broadly into two camps: those which take the *Warfield* approach and those which take the *Universal Clearing House* approach. This court is persuaded that the *Universal Clearing House* line of cases better accomplishes the aims of the UFTA and better promotes justice and fairness. It would be unwise to declare, as a matter of law, that services provided to a Ponzi scheme may never constitute reasonably equivalent value under the UFTA merely because the transferor is effectuating a fraud on its investors. Taken to its logical conclusion, this approach would lead to the undesirable outcomes recited by the *Universal Clearing House* court—any unsuspecting party who happens to transact or contract with an entity that is later revealed to be a Ponzi scheme would be punished. It would also raise the cost of doing business generally—if all brokers working for commissions knew that they may eventually have to forfeit the commissions, even if there was nothing suspect at the time about the company to which they were referring investors, transaction costs would needlessly increase.

A better approach is to distinguish, on a case by case basis, between good faith transferees and bad faith transferees. "Good faith," for purposes of the UFTA, "embodies the concept that one is free 'from knowledge of circumstances which ought to put the holder on inquiry.'" *S.E.C. v. Madison Real Estate Grp.*, 647 F. Supp. 1271, 1280 (D. Utah 2009) (quoting *Jobin v. McKay (In re M & L Bus. Mach. Co., Inc.)*, 84 F.3d 1330, 1335 (10th Cir. 1996) (citation and internal quotation marks omitted)). Those who receive referral fees knowing that they are helping to defraud investors, or who fail to make further inquiries despite warning signs, should not be permitted to retain the fruits of their bad acts. On the other hand, it would be unfair to void transfers to good faith transferees who provide their usual services at their usual rate and who do not know or have reason to suspect that the transferor is running a fraudulent scheme. In sum, the *Universal Clearing*

7

Case 2:18-cv-00054-JNP-DBP   Document 263   Filed 11/17/20   PageID.3063   Page 8 of 8

*House* approach better ensures that bad actors are penalized and innocent actors are shielded. And this approach also gets to the purpose of the UFTA—it helps distinguish between those cases in which the debtor is trying to improperly shield his assets from creditors by unloading them onto others and those cases in which the debtor is simply paying for goods or services.

Here, the only evidence that Windham offers in support of her contention that Defendants did not provide reasonably equivalent value is that 1) Deucher was running Marquis Properties as a Ponzi scheme, and 2) Defendants received payments from Marquis Properties. As explained above, this does not suffice to show that the Receiver is entitled to summary judgment. Rather, it is necessary for the trier of fact to determine whether Defendants acted in good faith, and if so, whether the transfers were reasonable payment for the services they provided to Marquis Properties. That is not to say that these issues could never be decided at the summary judgment stage. But summary judgment is unwarranted here because Windham has not met her burden to show that there is no genuine dispute of fact as to whether Defendants acted in good faith and whether their services constituted reasonably equivalent value for the payments they received.

## CONCLUSION AND ORDER

For the foregoing reasons, the court HEREBY ORDERS that the Receiver's Motions for Summary Judgment are DENIED.

DATED November 17, 2020.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge